E. I. duPont de Nemours & Company, a corporation, Plaintiff, v. J. D. Griffith, Inc., a corporation, Defendant.

*(April* 12, 1956.)

Layton, J., sitting.

*Carl E. Geuther* for the Plaintiff.

*Henry R. Horsey* (of Berl, Potter and Anderson) for the Defendant.

Superior Court for New Castle County, No. 529, Civil Action, 1955.

LAYTON, J.:

On the first proposition, defendant stresses the fact that plaintiff's own foreman, Wofford, was in charge of the subcontract. This happened in the following fashion. On a number of its cost-plus construction jobs, it was apparently plaintiff's custom to let a subcontract upon condition that the subcontractor hire one of plaintiff's own skilled foremen and put him in charge. Here, Wofford was called from plaintiff's employ in North Carolina and told he was to go on defendant's payroll as foreman in charge of the sheet metal contract on the building in question. This he did and in all respects acted as defendant's foreman in active charge of its job for a period of two years or more. Defendant takes the position that its status as an independent contractor has been converted into that of an agent as the result of plaintiff's insistence that the subcontract be in charge of one of its own men.

There is a growing tendency in the law of agency to ascribe considerable importance to the situation where a general contractor, or in this case an owner, places one of its own men in charge of a subcontract. 1 *Thompson, Negligence*, p. 547. *Snow v. Marian Realty Co.*, 212 *Cal.* 622, 299 *P.* 720. Whether, in the case before me, this odd relationship between the owner and subcontractor is a decisive factor is not necessary to decide for the reasons now stated.

Plaintiff had another of its foremen, Harrington, in the position of a coordinator over all the trades working upon the roof. From his testimony, it is reasonably possible to conclude that he was in charge of all the subcontractors having to do with the roof. Thus he testified:

"Q. That was your duty, was it not to see that everything was in shipshape? A. Yes, sir, but my duties was to inform the party involved. It could be the carpenter foreman or the sheet metal foreman, and we tell every man there may be a storm at night, 'Batten down the hatches'.

"Q. If you saw a piece of material which you thought needed to be secured, wasn't it your duty to see that it was secured? A. Yes, sir, I pinpoint anything. If I see it definitely in my path, I would pinpoint it."[1]

And, again, at the very end of his testimony, he said this:

"Q. In other words, you were the man, the top authority, so far as the roof is concerned? A. If I seen that a man wasn't doing his work up to the specifications, he would have to stop.

"Q. But isn't your opinion that you had overall control over the work done on the roof? A. Yes, sir."

This last bit of testimony was in no way contradicted or qualified by Harrington's superior who also testified. Plaintiff had the burden of proof. The status of Wofford on defendant's payroll was, to say the least, equivocal, and while not decisive, taken together with the position of authority occupied by Harrington, compels the conclusion that plaintiff had failed to meet its burden of proving its case by a preponderance

---

[1] Elsewhere in his testimony, Harrington admitted having seen the piece of duct work lying in an exposed position during the course of the afternoon.

"Q.  * * * well it [the piece of duct] had been placed there with your knowledge, hadn't it?

"A.  I would say, yes."

of the evidence. Because of the result here arrived at, it becomes unnecessary to consider defendant's second defense.

Judgment for defendant.